UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | ) ) | |
| | ) | Case No. 2:15-cv-02329-JPM-tmp |
| Plaintiff, | ) | |
| v. | ) | JURY DEMAND |
| | ) | |
| FEDEX CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Before the Court is Defendants' motion for judgment on the pleadings, filed August 31, 2015. (ECF No. 201.) For the following reasons, the Court DENIES the motion.

I. **BACKGROUND**

A. **Factual Background**

Plaintiff Ronald A. Katz Technology Licensing, L.P. ("Plaintiff") is a California limited partnership with its principal place of business in Los Angeles, California. (Am. Compl. ¶ 1, Ronald A. Katz Tech. Licensing L.P. v. Am. Airlines, Inc., No. 2:07-cv-02196-RGK-FFM (C.D. Cal.), ECF No. 113.)[1] Defendants FedEx Corporation, Federal Express Corporation, FedEx Corporate Services, Inc., FedEx Customer Information Services,

_____

[1] This case was transferred from the Central District of California to the Western District of Tennessee.

1

Inc. ("Defendants") are Delaware corporations with their principal place of business in Memphis, Tennessee. (Id. ¶¶ 4-7.)

This case involves U.S. Patent No. 6,292,547 ("the '547 Patent"), entitled "Telephonic-interface statistical analysis system." ('547 Patent at 1, ECF No. 202-3.) Plaintiff asserts that it is the sole holder of the entire right, title, and interest in the '547 Patent. (Am. Compl. ¶ 59.) Plaintiff alleges that Defendants willfully infringe the '547 Patent by "operat[ing] automated telephone systems . . . that allow their customers to perform purchasing, ordering, parcel-tracking, delivering, receiving, confirmation and other functions over the telephone." (Id. ¶¶ 60-61, 63.)

Defendants assert that claim 18 of the '547 Patent, the only asserted claim remaining, fails to recite patent-eligible subject matter under 35 U.S.C. § 101. (ECF No. 201 at 1-2, 4.) Claim 18 is a dependent claim of claim 11 and reads:

> **11.** An analysis control system for use with a communication facility including remote terminals for individual callers, wherein each of said remote terminals comprises a telephonic instrument including a voice communication device and digital input device in the form of an array of alphabetic numeric buttons for providing data and wherein said communication facility has a capability to automatically provide terminal digital data, indicating a calling telephone number, said analysis control system comprising:
> interface structure coupled to said communication facility to interface said remote terminals for voice and digital communication and including means to provide caller data signals representative of data relating to said individual callers provided from said remote

2

terminals or automatically provided by the communication
facility with respect to the remote terminals prior to
the close of communication with the caller, including
caller personal identification data entered by the caller
via the digital input device and said terminal digital
data indicative of a calling telephone number;

record testing structure connected to receive and
test said caller data signals indicative of said terminal
digital data representative of said calling telephone
number and said caller personal identification data
against previously stored terminal digital data and
caller personal identification data;

storage structure for storing certain of said data
provided by said individual callers including item data
for ordering particular items; and

analysis structure for receiving and processing said
caller data signals under control of said record testing
structure.
. . . .
**18.** A control system according to claim **11**, wherein the
data identifying the order is number data.

('547 Patent col. 22 l. 50 – col. 23 l. 37.)

### B.    Procedural Background

Plaintiff filed the original Complaint in the U.S. District

Court for the Eastern District of Texas on August 21, 2006.

(Compl., ECF No. 1.)  The Complaint was filed against multiple

defendants, all of whom have been terminated except for the four

Defendants in this case.  (See ECF No. 163.)

On April 17, 2007, the case was transferred pursuant to a

multi-district litigation to the U.S. District Court for the

Central District of California.  (ECF No. 102.)  On December 7,

2007, Plaintiff filed an amended complaint.  (Am. Compl., Ronald

A. Katz Tech. Licensing L.P. v. Am. Airlines, Inc., No.

2:07-cv-02196-RGK-FFM (C.D. Cal.), ECF No. 113.)  Defendants

filed an answer and counterclaim on December 21, 2007. (Answer & Countercl., id., ECF No. 121.) Plaintiff filed a response on January 11, 2008. (Resp., id., ECF No. 128.) The claim construction order was entered on February 21, 2008. (Order Re: Claim Construction, id., ECF No. 148.)

On November 12, 2014, the action was remanded to the U.S. District Court for the Eastern District of Texas. (ECF No. 104.) Defendants filed a motion to change venue to the U.S. District Court for the Western District of Tennessee on December 18, 2014. (ECF No. 106.) Plaintiff responded in opposition on January 12, 2015. (ECF No. 112.) Defendants filed a reply on January 22, 2015. (ECF No. 113.) Plaintiff filed a sur-reply on January 29, 2015. (ECF No. 114.) The motion to change venue was granted on April 20, 2015. (ECF No. 117.)

Defendants filed a motion to stay on June 3, 2015. (ECF No. 134.) Plaintiff responded in opposition on June 22, 2015. (ECF No. 152.) The Court denied the motion on June 29, 2015. (ECF No. 162.)

On August 31, 2015, Defendants filed the instant motion for judgment on the pleadings. (ECF No. 201.) Plaintiff responded in opposition on October 1, 2015. (ECF No. 214.) Defendants filed a reply on October 19, 2015. (ECF No. 216.) Plaintiff filed a sur-reply on November 3, 2015. (ECF No. 223.) A telephonic hearing on the instant motion was held on December

4

16, 2015.  (Min. Entry, CF No. 242.)  Defendants filed a notice

of supplemental authority (Cloud Satchel, LLC v. Amazon.com,

Inc., 76 F. Supp. 3d 553 (D. Del. 2014)) on December 21, 2015.

(ECF No. 255.)  Plaintiff filed a response on December 23, 2015.

(ECF No. 256.)  Defendants filed a response to Plaintiff's

response on December 29, 2015.  (ECF No. 258.)

Defendants filed another notice of supplemental authority

(Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC,

No. 2015-1411, 2015 WL 9461707 (Fed. Cir. Dec. 28, 2015)) on

December 30, 2015.  (ECF No. 260.)  Plaintiff filed a response

on January 7, 2016.  (ECF No. 261.)

With leave of Court, Defendants filed a supplemental brief

on March 23, 2016.  (ECF No. 282.)  The Court also granted

Plaintiff's unopposed motion to respond to the supplemental

brief on March 23, 2016.  (ECF No. 286.)

Plaintiff and Defendants have filed motions to exclude

certain testimony of several opinion witnesses.  (ECF No. 227,

229-233.)  These motions remain pending.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that

"[a]fter the pleadings are closed -- but early enough not to

delay trial -- a party may move for judgment on the pleadings."

Since the grant or denial of judgment on the pleadings is not

uniquely a patent issue, the law of the regional circuit is

applied.  See Allergan, Inc. v. Athena Cosmetics, Inc., 640 F.3d
1377, 1380 (Fed. Cir. 2011).

A motion for judgment on the pleadings under Rule 12(c) is
analyzed under the same standard as a motion to dismiss under
Rule 12(b)(6).  Sensations, Inc. v. City of Grand Rapids,
526 F.3d 291, 295 (6th Cir. 2008) (citing Penny/Ohlmann/Nieman,
Inc. v. Miami Valley Pension Corp., 399 F.3d 692, 697 (6th Cir.
2005)); see also Lindsay v. Yates, 498 F.3d 434, 437 n.5
(6th Cir. 2007).  Under Rule 12(b)(6), a court must "construe
the complaint in the light most favorable to the plaintiff,
accept its allegations as true, and draw all reasonable
inferences in favor of the plaintiff."  DirecTV, Inc. v. Treesh,
487 F.3d 471, 476 (6th Cir. 2007).  The court, however, "need
not accept as true legal conclusions or unwarranted factual
inferences."  Id. (quoting Gregory v. Shelby Cnty., 220 F.3d
433, 446 (6th Cir. 2000)).  "Conclusory allegations or legal
conclusions masquerading as factual allegations will not
suffice."  Bishop v. Lucent Techs., Inc., 520 F.3d 516, 519
(6th Cir. 2008).

A Rule 12(c) motion that seeks a determination of
invalidity must be supported by clear and convincing evidence
appearing in the patent.  Vehicle Intelligence & Safety LLC v.
Mercedes-Benz USA, LLC, 78 F. Supp. 3d 884, 887 (N.D. Ill. 2015)
(citing Microsoft Corp. v. i4i Ltd. P'ship, 131 S. Ct. 2238,

6

2242 (2011)), aff'd per curiam, 2015 WL 9461707 (Dec. 28, 2015).

"A Rule 12(c) motion is appropriately granted 'when no material
issue of fact exists and the party making the motion is entitled
to judgment as a matter of law.'" Stafford v. Jewelers Mut.
Ins. Co., 554 F. App'x 360, 370 (6th Cir. 2014) (quoting Tucker
v. Middleburg-Legacy Place, LLC, 539 F.3d 545, 549 (6th Cir.
2008)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters
outside the pleadings are presented to and not excluded by the
court, the motion must be treated as one for summary judgment
under Rule 56." Fed. R. Civ. P. 12(d). "In ruling on a motion
for judgment on the pleadings, . . . the Court may consider the
complaint as well as (1) documents that are referenced in the
plaintiff's complaint or that are central to plaintiff's claims
and (2) matters of which a court may take judicial notice."
Wrobel v. Huron-Clinton Metro. Auth., No. 13-cv-13168, 2014 WL
1460305, at *6 (E.D. Mich. Apr. 15, 2014) (citing Tellabs, Inc.
v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)); see
also KRS Int'l Co. v. Delphi Auto. Sys., LLC, 523 F. App'x 357,
359 (6th Cir. 2013) ("[A] court 'may consider the Complaint and
any exhibits attached thereto, public records, items appearing
in the record of the case and exhibits attached to defendant's
motion to dismiss so long as they are referred to in the
Complaint and are central to the claims contained therein,'

7

without converting the motion to one for summary judgment."
(quoting Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d
426, 430 (6th Cir. 2008))). In addition, "documents 'integral'
to the complaint" may be relied upon, "even if [they are] not
attached or incorporated by reference . . . [when] there exist
no material disputed issues of fact regarding the relevance of
the document." Mediacom Se. LLC v. BellSouth Telecomms., Inc.,
672 F.3d 396, 400 (6th Cir. 2012) (citations and internal
quotation marks omitted)).

## III. ANALYSIS

Thirty-five U.S.C. § 101 sets forth that: "Whoever invents
or discovers any new and useful process, machine, manufacture,
or composition of matter, or any new and useful improvement
thereof, may obtain a patent therefor, subject to the conditions
and requirements of this title." "Patent eligibility under
§ 101 presents an issue of law . . . . This legal conclusion may
contain underlying factual issues." Accenture Glob. Servs.,
GmbH v. Guidewire Software, Inc., 728 F.3d 1336, 1340-41 (Fed.
Cir. 2013).

It is well-settled that "[l]aws of nature, natural
phenomena, and abstract ideas are not patentable." Alice Corp.
Pty. Ltd. v. CLS Bank Int'l., 134 S. Ct. 2347, 2354 (2014)
(quoting Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,
133 S. Ct. 2107, 2116 (2013)). An invention, however, "is not

8

rendered ineligible for patent simply because it involves an abstract concept." Id. There is an exception under § 101 for patents that apply an abstract concept "to a new and useful end." Id. (quoting Gottschalk v. Benson, 409 U.S. 63, 67 (1972)).

The unanimous Supreme Court decision in Alice provided a two-part analysis for determining whether the application of an abstract idea would be patent-eligible: (1) "whether the claims at issue are directed to one of those patent-ineligible concepts;" and (2) "whether the additional elements [of a claim] 'transform the nature of the claim' into a patent-eligible application." Id. at 2355 (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1294 (2012)). The Court applies this test to determine whether Defendants are entitled to judgment on the pleadings.

**A.    First Alice Step: "Directed To" a Patent-Ineligible Concept**

The first part of a patentability analysis under Alice requires the Court to determine whether claim 18 is directed to a patent-ineligible concept. Alice, 134 S. Ct. at 2355. Defendants assert that independent claim 11, on which claim 18 depends, recites a system of item-ordering that has been found to be patent-ineligible due to abstractness. (ECF No. 201 at 8 (citing CyberSource Corp. v. Retail Decisions, Inc., 654 F.3d

9

1366, 1370 (Fed. Cir. 2011).)  Defendants argue that
item-ordering is a fundamental economic practice and that claim
18 is directed only to item-ordering, an abstract idea.  (Id. at
9-13.)  Plaintiff argues that claim 18 is not directed only to
item-ordering; the mechanism described by claim 18 is useful in
additional activities beyond item-ordering; and thus, claim 18
is not directed only to an abstract idea.  (ECF No. 214 at 9.)
The Court agrees with Plaintiff.

### 1.   "Item-ordering" and "Restricting Access" Are Abstract Ideas

Abstract ideas have long been deemed patent-ineligible
because "no one can claim in . . . them an exclusive right."
Alice, 134 S. Ct. at 2355 (quoting Le Roy v. Tatham, 55 U.S. (14
How.) 156, 175 (1853)).  The Supreme Court in Bilski v. Kappos
held that hedging, or protecting against risk, a "fundamental
economic practice long prevalent in our system of commerce," was
patent-ineligible as an abstract idea.  561 U.S. 593, 611 (2010)
(comparing hedging, described in one claim and reduced to a
formula in another claim, to algorithms deemed unpatentable in
earlier Supreme Court cases).  Defendants assert that
item-ordering is also a "fundamental economic practice," and
thus, an abstract idea.  (ECF No. 201 at 9.)  Plaintiff conceded
during the hearing on the instant motion that, at a high level,
item-ordering is abstract.  Thus, there is no disputed material

10

fact as to this issue.

Defendants argue further that the claim is directed to
"restricting access" of callers, which is a fundamental business
practice and could be performed by humans, albeit at a slower
rate and higher cost.  (ECF No. 216 at 5-7.)  When the steps of
a claim "can be performed in the human mind, or by a human using
a pen and paper," the claim recites an abstract idea that is
unpatentable.  CyberSource, 654 F.3d at 1372-73 (citing Benson,
409 U.S. at 67).  The process described by claim 18 does appear
to be performable by humans who could answer a call, obtain
information from the caller to identify the caller, and allow
certain callers access.  But see Card Verification Sols., LLC v.
Citigroup Inc., 2014 WL 4922524, at *4 (N.D. Ill. Sept. 29,
2014) (acknowledging that "an entirely plausible interpretation
of the claims" could find a limitation that could not be done
with pen and paper).  When a claim does not "preempt the field
of [an activity] . . . but capture[s] only one effective form
[of the activity]," then it may still be patentable.  Cal. Inst.
of Tech. v. Hughes Commc'ns, 59 F. Supp. 3d 974, 996 (C.D. Cal.
2014).  In the instant case, access restriction is likely
abstract as the steps of the claim can be performed by humans,
but the Court does not foreclose the possibility that access

11

restriction is not solely a mental process or process
performable with pen and paper.[2]

Having determined that item-ordering is an abstract idea
and that restricting access is also likely abstract, the Court
must next evaluate whether claim 18 is directed to these
activities.

### 2.  Claim 18 Is Not "Directed To" Only Abstract Ideas

While an abstract idea is unpatentable, patent-eligible
applications of the idea may still exist.  See Alice, 134 S. Ct.
at 2355.  The Court looks to the patent, and specifically the
claim,[3] to determine whether claim 18 is directed only to
abstract ideas.  The '547 Patent describes a
telephonic-interface system that allows for the selection or
qualification of a set of callers, positively identifies callers
in the set, and analyzes data acquired from the callers and
external data to isolate a subset of callers through a
verification process.  ('547 Patent col. 1 ll. 55-64.)  Two
capabilities, Dialed Number Identification Service ("DNIS") and

---

[2] The court in Hughes cautioned that "[c]ourts should not view software
as abstract simply because it exists in an intangible form."  Hughes, 59 F.
Supp. 3d at 994 n.19.  "The Court should not ask whether a human can [execute
the claimed process] using pencil and paper.  Instead, the Court must ask
whether the [process] in [the] claim [] constitutes an inventive concept that
sufficiently limits the claim's preemptive effect."  Id. at 995.
[3] The '547 Patent does not appear to be included in the pleadings.  It
may be relied upon even if it is not included in the pleadings because the
patent is "integral to the complaint" and there is no material factual
dispute as to its relevance.  See Mediacom, 672 F.3d at 400.  Consideration
of the '547 Patent, thus, does not convert the Rule 12(c) motion to a Rule 56
motion for summary judgment.  See KRS Int'l, 523 F. App'x at 359.

Automatic Number Identification ("ANI"), can be used to analyze the call data based on the called or calling number.  (Id. col. 4 ll. 58-65.)  The system can be used in "such functional operating formats as an auction sale, a contest, a lottery, a poll, a merchandising operation, a game, and so on."  (Id. col. 2 ll. 20-22.)

Claim 11, the independent claim on which claim 18 depends, describes a control system that comprises four structures: (1) an interface structure to interface remote caller terminals; (2) a record testing structure to receive caller data signals and test caller data against stored data; (3) a storage structure to store caller data, including "item data for ordering particular items"; and (4) an analysis structure for receiving and processing caller data under control of the record testing structure.  ('547 Patent col. 22 l. 50 – col. 23 l. 15.) Claim 18 limits claim 11 only to systems "wherein the data identifying the order is number data."  (Id. col. 23 ll. 36-37.)

Defendants assert that the steps described by claim 18 are present in "virtually all item-ordering systems and processes." (ECF No. 201 at 10.)  Plaintiff argues that claim 18 does not describe an item-ordering process and further, is "directed to a patent-eligible invention."  (ECF No. 214 at 8-14.)  The Court does not find clear and convincing evidence that claim 18 is directed only to the abstract idea of item-ordering and finds

that claim 18 may be directed to at least one patent-eligible application.

First, the language of claim 11 is sufficiently broad so as not to limit the claim to item-ordering. While claim 11 states that caller data could "includ[e] item data for ordering particularly items," there is nothing in the claim that states that the caller data <u>must</u> be data for items ordered. ('547 Patent col. 23 ll. 11-12.) Further, although claim 18 states that the data must be number data identifying the order, the claim, like claim 11, also does not specify item-ordering. As the specification notes, the system can be used for orders not just of merchandise but also of auction bids and contest, lottery, and game entries, among other applications. (<u>See</u> <u>id.</u> col. 2 ll. 20-22.) Based on the plain language of the claim, claim 18 can be directed at a number of activities, some of which may be not abstract ideas. Claim 18 is not directed only to item-ordering.

In addition, claim 18 describes a testing structure for analyzing caller data against stored data, which is a specific way of performing the function of processing calls to determine an entitled subset of callers. (<u>See</u> <u>id.</u> col. 23 ll. 3-7; <u>see,</u> <u>e.g.</u>, col. 21 ll. 47-51.) While Defendants argue, and the Court agrees that it is likely, that the security measure of "restricting access" is an abstract idea (<u>see</u> <u>supra</u> Part

III.A.1; ECF No. 216 at 5-7), the claim is directed to a particular _method_ of restricting access, which could render it patent-eligible.  See CLS Bank Int'l v. Alice Corp. Pty. Ltd., 717 F.3d 1269, 1302 (Fed. Cir. 2013) (per curiam) (finding that "unlike claims directed to nothing more than the idea of doing that thing on a computer," claims directed at a specific way to do something on a computer are likely patentable), aff'd, 134 S. Ct. 2347 (2014).

Taking the claim in the light most favorable to Plaintiff, the Court does not find that the claim is directed only to item-ordering and finds that the claim may be patent-eligible because it describes a specific way of processing calls to restrict access.  Thus, the first step of the _Alice_ test has not been met.  Accordingly, the Court DENIES Defendant's motion for judgment on the pleadings.

## B. Second _Alice_ Step: Transforming the Nature of the Claim Into a Patent-Eligible Application

Even if the Court were to determine that claim 18 _is_ directed only to patent-ineligible abstract ideas, Defendants could not succeed on the second part of the _Alice_ analysis, which considers the "transformative" aspects of the claim which would make it patent-eligible.  See _Alice_, 134 S. Ct. at 2355. A claim's elements, taken both individually and in concert as an ordered combination, must be "sufficient to ensure that the

patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." Id. (quoting Mayo, 132 S. Ct. at 1294) (alteration in original); see also Mayo, 132 S. Ct. at 1297 ("If a law of nature is not patentable, then neither is a process reciting a law of nature, unless that process has additional features that provide practical assurance that the process is more than a drafting effort designed to monopolize the law of nature itself.").

Defendants argue that claim 18 does not recite any "inventive concept" that renders it patent-eligible because each of the four structures in the claim is conventional. (ECF No. 201 at 14-17.) Defendants assert that the use of a computer to achieve the claim's purpose does not impart patentability, and argue rather that the claim "must either improve the functionality of the computer itself or improve the technology in another technical field." (Id. at 18.) Plaintiff argues that claim 18 solves telecommunications problems where no prior solutions were available. (ECF No. 214 at 15.) Plaintiff further argues that the specialized components of claim 18 provide a "meaningful limitation" that supports patentability. (Id. at 20 (citing CLS Bank, 717 F.3d at 1302).) The Court does not find clear and convincing evidence that claim 18 is devoid of an inventive concept.

## 1. Not Every Element of Claim 18 Is Conventional

A claim that "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application . . . . must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." Alice, 134 S. Ct. at 2357 (quoting Mayo, 132 S. Ct. at 1289). A claim whose recited elements are all "generic computer elements," does not contain an inventive concept. Intellectual Ventures I LLC v. Capital One Bank (USA), 792 F.3d 1363, 1368 (Fed. Cir. 2015) (providing "a database, a user profile . . . and a communication medium" as examples of generic computer elements).

Defendants argue that claim 18 does not recite an inventive concept because it is merely a recitation of generic or conventional structures. (ECF No. 201 at 14-17.) Plaintiff argues that claim 18 includes specialized components, but also that it would recite patentable subject matter even if each component were conventional, because the combination of the components creates an unconventional invention. (ECF No. 214 at 14-15.) The Court disagrees with Defendants that all four structures of the claim are necessarily conventional.

The four structures of the claim are: an interface structure, a record testing structure, a storage structure, and an analysis structure. ('547 Patent col. 22 ll. 58 – col. 23

17

ll. 1-15.)  The main structure at issue is the record testing structure which receives and tests caller data signals indicative of terminal digital data representing the caller's telephone number and personal identification data against previously stored terminal digital data and caller personal identification data.  (See '547 Patent col. 23 ll. 3-8.)  The Court finds that Defendants' characterization of the record testing structure as a generic processor that stores and analyzes data (see ECF No. 201 at 16) is too broad;[4] rather, the structure is a processor of specific data for a specific purpose: the structure only receives caller data in the form of number data and personal identification data.

Defendants acknowledge that "[t]he construction of ["record testing structure"] includ[es] 'the Processing Unit,' 'Qualification Unit,' and a 'Look-Up Table.'"[5]  (ECF No. 201 at 16; see Ronald A. Katz, Tech. Licensing v. AT & T Corp., 63 F. Supp. 2d 583, 608 (E.D. Pa. 1999) (construing Claim 192 of U.S.

_____

[4] Plaintiff also notes that the testing structure does not store data. (ECF No. 214 at 19.)  Claim 18 separately contains a storage structure element. (See '547 Patent col. 23 ll. 9-12.)

[5] As noted in the patent specification, the structure requires separate units that a generic computer would not.  (See, e.g., '547 Patent col. 10 ll. 1-25 ("The input line 91 . . . is connected specifically to a qualification unit 93 . . . as well as the processing unit 92 . . . . [T]he qualification unit 93 . . . is connected to a look-up table 99 and a use-rate calculator 100.").)  The claim itself, however, must "provide sufficient additional features or limit the abstract concept in a meaningful way," as "the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method."  Accenture, 728 F.3d at 1345 (emphasis added).

18

Patent No. 5,561,707, which is nearly identical to Claim 18 of

the '547 Patent).)[6]  In its supplemental claim construction

order, the multi-district litigation court's discussion

indicates that the record testing structure is a

means-plus-function limitation[7] and is implemented by a

special-purpose, not generic, computer.[8]  (Suppl. Claim Constr.

---

[6] While Defendants assert in their briefing here that such claim
construction confirms that the record testing structure is made of ordinary
processors (see, e.g., ECF No. 201 at 16; ECF No. 282 at 2), they previously
asserted in claim construction briefing that "the 'record testing structure'
is a special purpose computer with a specialized function" (Defs.' Resp. to
Suppl. Claim Constr. Br. at 4, In re Katz Interactive Call Processing Patent
Litig., No. 2:08-ML-1816-B RGK (FFMx) (C.D. Cal. Oct. 26, 2011), ECF No.
7500).  Defendants argued then that the analysis structure was under the
control of the specialized function of the record testing structure.  (Id. at
3-4.)

[7] Thirty-five U.S.C. § 112 provides that:

An element in a claim for a combination may be expressed as a means
or step for performing a specified function without the recital of
structure, material, or acts in support thereof, and such claim
shall be construed to cover the corresponding structure, material,
or acts described in the specification and equivalents thereof.

35 U.S.C. § 112(f).  "[A] means-plus-function claim element for which the
only disclosed structure is a general purpose computer is invalid if the
specification fails to disclose an algorithm for performing the claimed
function."  Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1367 (Fed.
Cir. 2008).  In a reexamination proceeding, the Patent Examiner noted that
there was sufficient disclosure such that "an algorithm for performing the
function or . . . a specialized computer [was provided]."  (Notice of Intent
to Issue Ex Parte Reexamination Certificate, Ex. B at 5, ECF No. 214-2.)

The court's supplemental claim construction order also indicates that
the analysis structure is a means plus function limitation, where the recited
function is "receiving and processing said caller data signals."  (Suppl.
Claim Constr. Order at 3, In re Katz, No. 2:08-ML-1816-B RGK (FFMx) (C.D.
Cal. Apr. 26, 2012), ECF No. 7592.)

[8] Defendants assert in their supplemental brief that Plaintiff in a
reexamination response referred to a generic processor as an alternative
component of the record testing structure.  (ECF No. 282 at 2-6.)  Plaintiff,
however, did not argue any alternative or generic structures were disclosed
by the '547 Patent.  (See ECF No. 282-1 at 3 n.2 ("The '547 patent may also
disclose alternative sets of corresponding structures in alternative

Order at 3, <u>In re Katz Interactive Call Processing Patent</u>
<u>Litig.</u>, No. 2:08-ML-1816-B RGK (FFMx) (C.D. Cal. Apr. 26, 2012),
ECF No. 7592.)

For the reasons stated above, the record testing structure
is not a conventional processor because it is specialized and
its components limit and define the system that is claimed.  <u>See</u>
<u>Apple Inc. v. Sightsound Techs., LLC</u>, No. CBM2013-00019, Paper
17 (P.T.A.B. Oct. 8, 2013) (finding that the components of a
claim and the specific functions performed using such components
"represent meaningful limitations on the scope of the patent").

Even if the units are considered generic as Defendants
assert (<u>see</u> ECF No. 201 at 16), the structure utilizes them for
a specific purpose that is not conventional[9] and thus, is likely
patent-eligible.[10]  <u>See</u> <u>CLS Bank</u>, 717 F.3d at 1302 (finding a
likelihood of patentability when a claim recites "a <u>specific way</u>
of doing something with a computer, or a <u>specific computer</u> for
doing something"); <u>see also</u> <u>supra</u> Part III.A.2 at 14.

---

embodiments and disclosures in the specification. [Plaintiff] does not take a
position herein on such alternative structures." (emphasis added)).)

[9] The record testing structure is meant to process terminal digit data
which may be provided by another structure; this purpose is not conventional
because prior telecommunications methods required activity on the caller's
part, such as dialing numbers, while the claimed solution does not depend on
caller-provided data.  (<u>See</u> '547 Patent col. 1 ll. 23-67, col. 23 ll. 3-8.)

[10] Insofar as a factual dispute remains about the specialization of the
structures in claim 18, Defendants would also not be entitled to judgment on
the pleadings.  <u>See</u> <u>Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC</u>, 477
F.3d 383, 389 (6th Cir. 2007) ("We . . . determine whether the plaintiff
undoubtedly can prove no set of facts in support of the claims that would
entitle relief." (internal quotation marks omitted)).

## 2. The Whole Claim May Recite Patentable Subject Matter

Similarly, even if the four structures of claim 18 are conventional as Defendants assert (see ECF No. 201 at 15-17), the combination of the claim elements plausibly recites patentable subject matter because the claim as a whole solves a technological problem in the computer-telephony industry. See Alice, 134 S. Ct. at 2358 (citing Diamond v. Diehr, 450 U.S. 175, 178 (1981)) ("the claims in Diehr were patent-eligible because they improved an existing technological process").

In Diehr, the Supreme Court held that when a claim as a whole recites the implementation or application of a mathematical formula or other abstract idea to perform a patentable function, then § 101 is satisfied. 450 U.S. at 192. Although the second Alice step requires consideration of the elements both individually and as an ordered combination, 134 S. Ct. at 2355, "the fact that one or more of the steps . . . may not, in isolation, be novel or independently eligible for patent protection is irrelevant to the question of whether the claim[] as a whole recite[s] subject matter eligible for patent protection under § 101." Diehr, 450 U.S. at 193 n.15; see also Hughes, 59 F. Supp. 3d at 980 ("If the ordered combination of elements constitutes conventional activity, the claim is not patentable, but courts should remember that a series of

conventional elements may together form an unconventional
patentable combination."). A claim that recites an inventive
concept for resolving a particular industry problem is
considered unconventional and therefore patent-eligible. See
DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245, 1259 (Fed.
Cir. 2014); see also Card Verification, 2014 WL 4922524, at *5
(finding that a claim that "utilizes a system for modifying data
that may have a concrete effect in the field of electronic
communications" plausibly recites a patent-eligible application
of an abstract idea).

Defendants argue that this case is distinguishable from DDR
because claim 18, unlike the claims in DDR, does not recite an
unconventional operation. (ECF No. 216 at 7-8.) Plaintiff
asserts that DDR is analogous because the claim at issue in this
case similarly contains a "solution . . . necessarily rooted in
computer technology in order to overcome a problem specifically
arising in the realm of computer networks." (ECF No. 214 at 16
(quoting DDR, 773 F.3d at 1257).) The Court finds that claim 18
as a whole plausibly recites an unconventional solution to a
computer-telephony network problem, which is patentable subject
matter.

Like the claimed technology in DDR, which presented a
solution to a problem "particular to the Internet," DDR, 773
F.3d at 1257, the claimed technology in this case presents a

solution to a problem particular to computer-telephony.  While Defendants assert that the problem is "customer verification," which is not unique to computer telephony, (ECF No. 216 at 8), they ignore the limitation in the claim of performing caller verification based on terminal digital data, (see, e.g., '547 Patent col. 23 ll. 1-7) which is necessarily only a computer-telephony capability.  The patent summary notes that the invention can verify callers in a set in part using external, time-independent and not caller-provided data, while prior arrangements required callers to interface with the computer by dialing buttons in real time.  (Id. col. 1 ll. 39-67.)  Claim 18 describes a system that enables such a form of unconventional caller verification.

Accordingly, even if the analysis of the first Alice step had found that claim 18 was directed to a patent-ineligible abstract idea, the second step of the Alice test, which requires transformation of the nature of the claim into a patent-eligible application, would be in Plaintiff's favor.  Thus, the Court DENIES Defendants' motion for judgment on the pleadings.

**IV.  CONCLUSION**

Applying the two-part Alice test, the Court finds that a determination of invalidity of claim 18 is not supported by clear and convincing evidence in the patent.  Claim 18 is not directed only to a patent-ineligible concept, and the nature of

claim 18 is transformative so as to be patentable.  In addition,

at this stage, disputed facts likely remain that preclude a

finding of invalidity.  <u>See</u> <u>supra</u> Part III.B.1 n.9.

Accordingly, Defendants' Motion for Judgment on the Pleadings is

DENIED.

    **IT IS SO ORDERED**, this 24th day of March, 2016.


                /s/ Jon P. McCalla
                JON P. McCALLA
                UNITED STATES DISTRICT JUDGE